UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MANUEL JAMES GONZALEZ,
as legal guardian of REG, a minor,

      Plaintiffs,

v.                                        Case No. 8:24-cv-2014-TPB-LSG

ROYSE SERVICES LLC d/b/a
LAVIDA VACATION,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

The plaintiff Manuel James Gonzalez, as legal guardian of R.E.G., a minor, moves, Doc. 15, under Rule 55(b)(2), Federal Rules of Civil Procedure, and Local Rule 1.10(c), for a default judgment against the defendant Royse Services LLC, doing business as Lavida Vacations. For the reasons explained below, I recommend granting Gonzalez's motion and entering final default judgment against the defendant.

### I.    BACKGROUND

Gonzalez sues Royse Services on behalf of his daughter, R.E.G., a minor child and alleges violations of (1) the Americans with Disability Act, 42 U.S.C. § 12181, et seq. ("ADA"); (2) the federal Fair Housing Act, 42 U.S.C. § 3604 ("FHA"); and (3) the Florida Fair Housing Act, Section 760.20-.37, Florida Statutes. Doc. 1 at 4-6.

R.E.G. has autism and requires the use of a service dog. Doc. 1 at ¶¶ 5, 9. R.E.G.'s condition "causes panic attacks and destructive tantrums," and her service dog "is certified and trained to stop the destructive behavior and prevent panic attacks." Doc. 1 at ¶ 9. Royse Services is a Florida limited liability company that operates under the name LaVida Vacations and owns and rents vacation rental properties. Doc. 1 at ¶¶ 6-7.

Gonzalez reserved Royse Services' rental property in Sarasota, Florida through LaVida Vacations' website for a family trip to Florida. Doc. 1 at ¶¶ 10-11. When Gonzalez and his family arrived at the rental property, Royse Services' manager refused to allow R.E.G.'s service dog on the property unless Gonzalez paid a pet deposit. Doc. 1 at ¶ 12. Gonzalez explained to the manager that R.E.G.'s service dog has a service collar and that it is "technically illegal" to require an extra fee for a service animal. Doc. 1-1. Gonzalez also disclosed that his family could not afford the extra service fee. Doc. 1-1. The manager refused and confirmed to Gonzalez that his family would "have to leave if [they] d[id]n't pay an extra fee for the service animal[.]" Doc. 1 at ¶ 12. The manager issued a refund and told Gonzalez's family to leave and find another place that allowed the service dog. Doc. 1 at ¶ 12; Doc. 1-1. Gonzalez sues to enforce Royse Services' compliance with the ADA and FHA because he intends to rent from the defendant in the future. Doc. 1 at ¶¶ 16, 18.

Gonzalez invokes federal question jurisdiction under 28 U.S.C. § 1331 based on his ADA and FHA claims and asserts supplemental jurisdiction under 28 U.S.C.

§ 1367 for his Florida Fair Housing Act claim. Doc. 1 at ¶¶ 1, 3. Gonzalez seeks declaratory and injunctive for his ADA claim, as well as actual and punitive damages, attorney's fees, and costs under Section 760.35, Florida Statutes. Doc. 1 at 2, 7-8.

After unsuccessfully attempting to serve Royse Services' registered agent, Doc. 6, Gonzalez served Royse Services through Florida's Secretary of State under Rule 4(h), Federal Rules of Civil Procedure, and Section 48.062(4), Florida Statutes. Doc. 9; Doc. 12 at ¶¶ 2-9. Royse Services failed to appear or otherwise defend. Accordingly, the Clerk entered a default against Royse Services, and Gonzalez moves for a default judgment. Docs. 12-13, 15.

A July 2, 2025, order, instructs Gonzalez to file supplemental briefing to demonstrate the timeliness of his claims, by providing the date of Royse Services' allegedly discriminatory acts, and to clarify his request for compensatory and punitive damages. Doc. 16. Gonzalez responds and files an affidavit demonstrating that the discriminatory act occurred on July 20, 2024, when Gonzalez and his family arrived at Royse Services' rental property and the manager told Gonzalez to pay an extra pet service fee of $150.00. Doc. 17 at 2; Doc. 17-1 at ¶¶ 5-6. Gonzalez confirms that neither he nor his daughter suffered damages. Doc. 17-1 at ¶ 7.

## II.    LEGAL STANDARD

Rule 55(b) permits a judgment by default if a defendant fails to plead or otherwise defend. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015). By defaulting, a defendant admits the plaintiff's well-pleaded factual allegations. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). However, a plaintiff "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (quotation omitted). If a sufficient factual basis exists for the judgment, a default judgment is warranted. *Id.*; *Quire v. Smith*, No. 21-10473, 2021 WL 3238806, at *2 (11th Cir. July 30, 2021) ("Entry of default judgment is warranted only when there is 'a sufficient basis in the pleadings for the judgment entered.'" (quotation omitted)).

The standard for obtaining a default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245. A court must evaluate the complaint to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To satisfy this plausibility standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-

pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245 (quotation omitted).

## III.    DISCUSSION

### A.    Subject matter jurisdiction exists in this action.

A federal court must also "determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Federals courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The presence of original jurisdiction permits the exercise of supplemental jurisdiction over all other claims "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Here, original jurisdiction exists over Gonzalez's claims arising out of the ADA and the FHA. Doc. 1 at 4-5. Supplemental jurisdiction is appropriate over Gonzalez's state law claim because Gonzalez's claim under the Florida Fair Housing Act is virtually identical to his FHA claims. *Compare* Doc. 1 at ¶¶ 20-24, *with* Doc. 1 at ¶¶ 25-30; *see also Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) ("The FHA and the Florida Fair Housing Act are substantively identical, and therefore the same legal analysis applies to each.").

**B.    Gonzalez is entitled to a default judgment against Royse Services.**

*1.    Gonzalez's ADA claim.*

Gonzalez sues Royse Services for violating the ADA and the ADA's implementing regulations by (1) discriminating against R.E.G. based on her disability, (2) requiring Gonzalez pay an additional pet fee for R.E.G.'s service animal to stay on the rental property, and (3) denying R.E.G.'s right of participation in the benefits and accommodations of its vacation rental property. Doc. 1 at ¶¶ 14-19 (citing 28 C.F.R. §§ 36.201, .202). Gonzalez seeks injunctive and declaratory relief requiring Royse Services to comply with the ADA, which requires Gonzalez to demonstrate that he has standing to sue on behalf of his minor daughter, R.E.G. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001); Doc. 1 at 7-8; Doc. 15 at 4 (citing 42 U.S.C. § 12188; 28 U.S.C. §§ 2201–2202).

To establish standing an individual must show (1) "an injury-in-fact", (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant[,]" and (3) that "the injury will be redressed by a favorable decision." *Shotz*, 256 F.3d at 1081 (explaining that these requirements are the "irreducible minimum" of Article III standing) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 664 (1993)). An individual seeking injunctive relief under the ADA must also show a threat of future injury that is real and immediate. *Id.* at 1082 ("In ADA cases, courts have held that a plaintiff lacks standing to seek

injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant."); *Houston v. Marod Supermarkets, Inc.,* 733 F.3d 1323, 1326 (11th Cir. 2013) (holding that a plaintiff satisfies the future injury requirement under the ADA by "attempt[ing] to return to the non-compliant building or at least intend[ing] to do so in the future.").

Here, Gonzalez has Article III standing. Royse Services discriminated against R.E.G. based on her disability by refusing to allow R.E.G. to use and enjoy the vacation rental property with the necessary assistance of her service animal unless Gonzalez paid an additional pet fee. Doc. 1 at ¶¶ 12, 14-15, 17; Docs. 1-1, 17-1. The complaint alleges that R.E.G. is likely to suffer future discrimination by Royse Services because Gonzalez's family, including R.E.G., have the "full intention" of renting Royse Services' vacation rental property in the future but cannot because of Royse Services' ADA violations. Doc. 1 at ¶¶ 16-18. These violations include (1) denying R.E.G. "the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of its rental property, (2) refusing service and to rent Gonzalez the vacation rental based on R.E.G.'s disability, and (3) refusing to accommodate R.E.G. Doc. 1 at ¶ 19. Accordingly, Gonzalez has Article III standing to sue Royse Services.

Additionally, the complaint alleges a sufficient factual basis in support of each element of Gonzalez's ADA claim against Royse Services. Title III of the ADA prohibits discrimination against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); *A. L. by & through D.L. v. Walt Disney Parks & Resorts U.S.*, Inc., 50 F.4th 1097, 1108 (11th Cir. 2022) (quoting 42 U.S.C. § 12182(a)). To allege a claim under Title III of the ADA, a plaintiff must show that: "(1) [s]he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011); 42 U.S.C. § 12182(a).

Here, the complaint establishes that Gonzalez's daughter, R.E.G., has autism. Doc. 1 at ¶¶ 5, 9. The ADA defines the term "disability" to include "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. §12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). Autism is a qualified disability under the ADA. *See A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 469 F. Supp.3d 1280, 1302 (M.D. Fla. 2020), *aff'd sub nom. A. L. by & through D.L.*, 50 F.4th at 1097 (citing the American Psychiatric Association's definition for autism as "a neurodevelopmental condition characterized by impairment in reciprocal social communication and social interaction and restricted repetitive patterns of behavior, interest or activities[.]"); *cf.* 34 C.F.R. § 300.8(c)(1)(i)

8

(defining autism as a "developmental disability significantly affecting verbal and nonverbal communication and social interaction" in regulations assisting states in the education of children with disabilities).

Further, Royse Services' vacation rental property qualifies as a "public accommodation" under the ADA. The ADA's definition of a "public accommodation" includes a private entity such as "an inn, hotel, motel, or other place of lodging," provided that the entity affects commerce and is not an establishment located in a building containing less than five rooms for rent or hire and is "occupied by the proprietor of such establishment as the residence of such proprietor." 42 U.S.C. § 12181(7)(A). The regulations implementing the ADA define a covered "place of lodging" to include:

(ii) A facility that—

    (A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and

    (B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn, including the following—
        (1) On- or off-site management and reservations service;
        (2) Rooms available on a walk-up or call-in basis;
        (3) Availability of housekeeping or linen service; and
        (4) Acceptance of reservations for a guest room type without guaranteeing a particular unit or room until check-in, and without a prior lease or security deposit.

28 C.F.R. § 36.104. A private residence is a "public accommodation" if it is "akin to a hotel, i.e., overnight 'rental' of the unit[]." *Champlin v. Sovereign Residential Servs.*, No. 608-CV-55-ORL-22DAB, 2008 WL 2646627, at *4 (M.D. Fla. June 26, 2008);

*cf. City of Miami v. AIRBNB, Inc.*, 260 So. 3d 478, 482 (Fla. 3d DCA 2018) ("[A] vacation rental is not permanent housing—it is a short-term rental intended to serve as a guest's transient housing[.]").

Here, the complaint establishes that Royse Services' rental property qualifies as a public accommodation under the ADA. Doc. 1 at ¶ 14. Royse Services advertised its vacation rental property on LaVida Vacations' website, and Gonzalez reserved the property online and paid a deposit. Doc. 1 at ¶¶ 6, 11. The property provides guest rooms "for stays that [a]re primarily short term in nature where the occupant does not have the right to return to a specific room or unit after the conclusion of [the] stay." Doc. 1 at ¶ 14. Royse Services also provided housekeeping services for the property. Doc. 17-1 at 3-5. Thus, the complaint establishes that Royse Services' vocational rental property is a public accommodation under the ADA.

Most essential to Gonzalez's ADA claim, the complaint's well-pleaded facts show that Royse Services discriminated against R.E.G. within the meaning of the ADA. Under the ADA, a public accommodation must "modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). A public accommodation may only ask an individual with a disability to remove a service animal from its premises if "(i) [t]he animal is out of control and the animal's handler does not take effective action to control it; or (ii) [t]he animal is not housebroken." 28 C.F.R. § 36.302(c)(2). Further, a place of public accommodation must not require an individual with a disability to pay a surcharge for service animals, even if a person accompanied by a pet typically must

10

pay a fee. *Id.* at § 36.302(c)(8); *see also Johnson v. Yashoda Hospitality, Inc.*, No. 2:15-cv-611-FtM-99CM, 2016 WL 6681023 at *3 (M.D. Fla. Nov. 11, 2016) (granting default judgment for a disabled individual who suffered humiliation after a hotel refused to waive a pet fee for his service animal). A public accommodation may only charge for damages caused by a service animal if the establishment normally charges individuals for damages. *Id.*

Here, the facts alleged in the complaint establish that Royse Services' manager insisted that Gonzalez pay a pet fee for R.E.G.'s service animal, despite Gonzalez providing a clear explanation that R.E.G. is disabled and requires the use of a service animal. Doc. 1 at ¶¶ 12, 18-19; Docs. 1-1, 17-1. Gonzalez even explained to the manager that the requirement of a pet fee for a service animal is prohibited by law, but the manager refused to permit R.E.G.'s service animal to remain on the property without paying an additional fee. Doc. 1 at ¶ 17; Doc. 1-1; Doc. 17-1 at 5-6. Instead, Royse Services refunded Gonzalez his money and required his family to leave, so that they "can find a place that allows it." Doc. 1-1 at 1. Thus, Royse Services discriminated against R.E.G. based on her disability by refusing to modify its pet fee policy despite knowing of R.E.G.'s disability and need for a service animal. 28 C.F.R. § 36.302(c)(1), .302(c)(8). Accordingly, Gonzalez is entitled to a default judgment for his ADA claim against Royse Services.

### 2.    *Gonzalez's FHA and Florida Fair Housing Act claims.*

Gonzalez sues Royse Services for a violation of the FHA in count two and a violation of the Florida Fair Housing Act in count three. Doc. 1 at 5-6. Because

Gonzalez's claims under the FHA and the Florida Fair Housing Acts are substantially similar, "the same legal analysis applies." *Bhogaita*, 765 F.3d at 1285; *Dornbach v. Holley*, 854 So. 2d 211, 213 (Fla. 2d DCA 2002) ("The Florida Legislature essentially codified the Federal Act when it enacted the Florida Fair Housing Act.").

Gonzalez has a private right of action and Article III standing to sue under the FHA. The FHA authorizes "an aggrieved person" to commence a civil action no later than two years after the "alleged discriminatory housing practice" occurred. 42 U.S.C. § 3613(a)(1)(A). An "[a]ggrieved person" "includes any person who claims to have been injured by a discriminatory housing practice[,] or believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i)(1). *See Atl. Hous. Partners L.L.L.P. v. Brevard Cnty.*, No. 6:23-CV-2473-JSS-DCI, 2024 WL 4235770, at *4 (M.D. Fla. Sept. 19, 2024); *see also Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221-22 (11th Cir. 2016) (permitting a parent to bring a disability discrimination claim under the FHA on behalf of her adult child).

Here, the complaint's well-pleaded allegations demonstrate that Gonzalez has a private right of action under the FHA and the Florida Fair Housing Act based on Royse Services' refusal to grant R.E.G. a reasonable accommodation, which denied R.E.G.'s use and enjoyment of Royse Services' rental property. Doc. 1 at ¶¶ 20-30. Gonzalez's supplemental briefing demonstrates that the discriminatory activity occurred on July 20, 2024, and his claims are within two years of the discriminatory act. Doc. 17 at 2; Doc. 17-1 at ¶¶ 5-6. Gonzalez satisfies the requirements for Article

12

III standing because he suffered an actual injury resulting from Royse Services'
failure to grant R.E.G. a reasonable accommodation, which is redressable with
equitable relief, attorney's fees, and costs. Doc. 1 at 7.

     Additionally, the complaint alleges that Royse Services violated the FHA and
the Florida Fair Housing Act's prohibition against discrimination based on a
person's "handicap"[1] or disability, which includes the "refus[al] to make reasonable
accommodations when necessary to afford the person equal opportunity to use and
enjoy a dwelling." *Bhogaita*, 765 F.3d at 1285; Doc. 1 at ¶¶ 20-30. Under the FHA, it
is "unlawful to discriminate in the rental of, or to otherwise make unavailable or
deny, a dwelling because of a disability of the renter or a person associated with the
renter." *Carlson v. Sunshine Villas HOA, Inc.*, No. 2:18–cv–1–FtM–99MRM, 2018 WL
2317820, at *3 (M.D. Fla. May 22, 2018) (citing 42 U.S.C. § 3604(f)(1)).

     A failure-to-accommodate claim under Section 3604(f)(1) requires factual
allegations demonstrating that the plaintiff is disabled within the meaning of the
FHA, that the plaintiff requested a reasonable accommodation necessary to the use
and enjoyment of the dwelling, and that the defendants refused the accommodation.

---

[1] The Eleventh Circuit announced a preference for the term "disability" when discussing
discrimination claims under the FHA:

> The FHA refers to discrimination based on "handicap" rather than disability. 42
> U.S.C. § 3604(f). Disability scholars, however, generally prefer the term "disability"
> to handicap, and the Americans with Disabilities Act . . . reflects that preference. For
> this reason, we treat the terms interchangeably and elect to use 'disability' and the
> preferred possessive construction."

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). The
term "disability" is used throughout this report and recommendation to refer to an
individual's "handicap" under the FHA.

*Bhogaita*, 765 F.3d at 1285. Typically, the owner of an establishment "need[s] only the information necessary to apprise [him] of the disability and the desire and possible need for an accommodation." *Id.* at 1287. The FHA requires that the accommodation qualify as both reasonable and necessary, which entails a "highly fact-specific" analysis "requiring case-by-case determination." *Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir. 2002) (citation modified); *Bhogaita*, 765 F.3d at 1289.

An accommodation is "reasonable" if "the requested accommodation 'is both efficacious and proportional to the costs to implement it.'" *Bhogaita*, 765 F.3d at 1285, 1289 (quoting *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)). In contrast, an accommodation is "necessary" if it "ameliorates the disability's effects." *Id.* at 1288-89 (holding that question of the "necessity" of a service animal entails whether there is "sufficient evidence that having the dog would affirmatively enhance [a disabled individual's] quality of life by ameliorating the effects of [the] disability.").

Here, the complaint establishes that Gonzalez's daughter, R.E.G., has autism and is disabled within the meaning of the FHA. *See* Doc. 1 at ¶¶ 5, 9; 42 U.S.C. § 3602(h)(1) (defining a "[h]andicap" under the FHA to mean "a physical or mental impairment which substantially limits one of more of such person's major life activities[.]"); 24 C.F.R. § 100.201(a)(2) (listing autism as one of the enumerated mental impairments in the FHA's implementing regulations). Gonzalez requested that Royse Services permit R.E.G. to have her service dog during her family's stay at Royse Services' rental property. Doc. 1 at ¶¶ 12, 22, 18; Doc. 1-1. The requested

14

accommodation is reasonable because R.E.G.'s condition "causes panic attacks and destructive tantrums," and her service dog is certified and trained to "stop the destructive behavior and prevent panic attacks." Doc. 1 at ¶ 9. R.E.G.'s service dog is necessary for her use and enjoyment of the rental property because her service dog mitigates her symptoms. Doc. 1 at ¶¶ 9, 23, 29.

Royse Services refused to allow Gonzalez's family, including R.E.G., to use and enjoy the rental property unless Gonzalez paid a pet deposit for R.E.G.'s service dog. Doc. 1 at ¶¶ 21, 24, 30; Docs. 1-1; 17-1. The pet fee is the only apparent basis for Royse Services' refusal. Thus, the uncontested factual allegations show that Royse Services discriminated against R.E.G. based on her disability by denying her the use and enjoyment of the rental property.

Further, Gonzalez supports his allegations by attaching to the complaint his correspondence with Royse Services' manager and his affidavit in support of default judgment. Doc. 1-1; Doc. 17-1 at 6. The correspondence shows that Gonzalez explained to the manager that R.E.G.'s service dog had a service collar and asked the manager to waive the "technically illegal" fee because his family could not afford to pay. Doc. 1-1 at 1. This demonstrates that Royse Services had sufficient information about R.E.G.'s disability and the need for an accommodation but refused to accommodate R.E.G. Thus, a default judgment is warranted on Gonzalez's claims under the FHA in count one and the Florida Fair Housing Act in count two.

**C.    Gonzalez is not entitled to compensatory or punitive damages.**

Although the complaint requests compensatory and punitive damages under Section 760.35, Florida Statutes, Doc. 1 at 7, Gonzalez's motion for default requests only declaratory and injunctive relief. Doc. 15 at 8-9. A July 2, 2025, order, Doc. 16, seeks clarification and requires Gonzalez to file a supplemental brief establishing his entitlement to compensatory and punitive damages. Gonzalez timely responds and attests that neither he nor R.E.G. suffered damages resulting from Royse Services' discrimination. Doc. 17 at 2; Doc. 17-1 at ¶¶ 5-6. Thus, despite Royse Services' default, Gonzalez is not entitled to an award of compensatory or punitive damages because he fails to demonstrate a basis for awarding damages. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (holding that even if a defendant defaults, a plaintiff must still demonstrate a legitimate basis for a damages award); *Miller v. Paradise of Port Richey, Inc.*, 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999) ("[A]llegations relating to the amount of damages are not admitted by virtue of default[.]").

**D.    Gonzalez is entitled to declaratory and injunctive relief.**

Gonzalez sues for declaratory and injunctive relief to enforce the ADA. Doc. 15 at 4 (citing 42 U.S.C. § 12188; 28 U.S.C. §§ 2201–2202). However, Gonzalez nowhere asserts that he satisfies the necessary elements for equitable relief. To obtain a permanent injunction under the ADA, a plaintiff must demonstrate "the same factors as it would in any other case in which a plaintiff sought a permanent injunction." *Wilson v. Broward Cnty., Fla.*, No. 04-61068-CIV., 2008 WL 708180, at

*1 (S.D. Fla. Mar. 14, 2008). These factors include: (1) that the plaintiff suffered an irreparable injury; (2) that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) that equitable relief is warranted "considering the balance of hardships between the plaintiff and defendant"; and (4) that a permanent injunction would not disserve the public interest. *Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d 1212, 1225 (M.D. Fla. 2012) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, as noted above, the complaint's factual allegations sufficiently demonstrate that Royse Services discriminated against R.E.G. based on her disability, which constitutes an injury-in-fact. Royse Services' continual failure to comply with the ADA by requiring a pet fee for service animals, despite Gonzalez and R.E.G.'s intent to stay at the vacation rental property in the future, demonstrates a future injury. As to the inadequacy of legal remedies, Title III of the ADA provides only injunctive and declaratory relief to private litigants. *Jairath v. Dyer*, 154 F.3d 1280, 1283 n. 7 (11th Cir. 1998). Gonzalez's supporting affidavit says that neither Gonzalez nor R.E.G. "suffered any damages as a result of the discrimination." Doc. 17-1 at ¶ 7. Thus, absent injunctive relief, Gonzalez is without means to rectify the harm caused by Royse Services' discrimination against R.E.G.

The balance of hardships between the parties favors a remedy in equity. Gonzalez requests injunctive relief requiring Royse Services to comply with its obligations under the ADA. Doc. 1 at 7. Not only is Royse Services legally obligated to comply with the ADA as a proprietor of a public accommodation, 28 C.F.R.

17

§ 36.202, but requiring Royse Services to accommodate disabled individuals accompanied with service animals imposes a minimal hardship on Royse Services. In contrast, requiring R.E.G. to go without her service animal is a hardship for her and Gonzalez, because R.E.G.'s service animal is certified, trained, and necessary to mitigate R.E.G.'s symptoms of panic attacks and destructive tantrums. Doc. 1 at ¶ 9. Similarly, the equitable relief of requiring Royse Services to waive its a pet fee requirement for service animals is a minimal hardship, whereas the complaint explains that a pet fee imposes a financial burden on Gonzalez's family. Doc. 1-1.

Finally, the public interest is served by requiring Royse Services to comply with the ADA. *Hoewischer*, 877 F. Supp. 2d at 1225 ("Given that the nature of Title III is to provide equitable redress to disabled individuals who experience discrimination in places of public accommodation, it follows that the public interest would not be disserved by the implementation of a permanent injunction to remove barriers to access[.]"). Thus, Gonzalez is entitled to equitable relief requiring Royse Services to comply with the ADA.

Gonzalez seeks a permanent injunction directing Royse Services to ensure that "the activities complained of are completely stopped immediately and not engaged in again by them or any of their agents." Doc. 1 at 7. Royse Services' prohibited activity includes prohibiting the use of a service dog without the payment of a fee. Doc. 1 at 7. Gonzalez requests an order directing Royse Services to "create, policies, practices, and procedures toward persons with disabilities that require use of a service dog, for such reasonable time so as to allow Defendants to undertake and complete corrective

18

measures." By defaulting, Royse Services "admits the plaintiff's well-pleaded allegations of fact," and Gonzalez is entitled to injunctive relief. *See e.g.*, *Spence v. Antojitos Mexicanos #1 Inc.*, No. 22-CV-61193-RAR, 2022 WL 4465392, at *4 (S.D. Fla. Sept. 24, 2022) (finding that a disabled individual is entitled to the entry of a final default judgment granting injunctive relief, including directing a restaurant to take all necessary steps to bring its property into full compliance with the ADA's requirements within six months) (quoting *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)).

Gonzalez also seeks is an order compelling Royse Services to "contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review of Defendant's policies, practices, and procedures for five (5) years commencing from the date of the Court's order to ensure that Defendant is in compliance with the ADA." Doc. 1 at 7. Gonzalez fails to argue or allege the necessity of hiring an independent contractor to ensure Royse Services complies with the ADA's requirements. In fact, the complaint establishes that Royse Services' ADA violations entail (1) denying R.E.G. "the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of its rental property and refusing service and to rent Gonzalez the vacation rental based on R.E.G.'s disability, and (2) refusing to accommodate R.E.G. Doc. 1 at ¶ 19. Gonzalez cites no further ADA violations requiring expert analysis. Thus, Gonzalez is not entitled to an order compelling Royse Services to hire an independent expert to ensure compliance with the ADA. *See Eagle Hosp.*

*Physicians, LLC*, 561 F.3d at 1307 ("A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations.)" (quoting *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))).

Finally, Gonzalez, requests an award of attorney's fees and costs under Section 760.35, Florida Statutes. Doc. 1 at 7; Doc. 15 at 9. Section 760.35(4) permits an award of reasonable attorney fees and costs on the finding "that a discriminatory housing practice has occurred." Fla. Stat. § 760.35(4); *see also* 42 U.S.C. § 3613(c)(2) (granting the court discretion to award the prevailing party in an FHA claim "a reasonable attorney's fee and costs."); FED. R. CIV. P. 54(d)(1) (providing that costs "should be allowed to the prevailing party."). Gonzalez, as the prevailing party, is entitled to recover reasonable attorney's fees under Florida's Fair Housing Act. Thus, Gonzalez should file no later than forty-five days after the order finding entitlement a supplemental motion on the amount of fees and a supplemental bill of costs with supporting evidence. *See* Local Rule 7.01(c); 28 U.S.C. § 1290 (delineating the categories of recoverable costs under Rule 54(d)(1)).

## III.    CONCLUSION

Accordingly, I recommend **GRANTING** the motion for default judgment against Royse Services, LLC, Doc. 15. I further recommend an order directing the Clerk to enter a judgment in favor of the plaintiff Manuel James Gonzalez, as legal guardian of R.E.G., a minor, and against the defendant Royse Services, LLC, d/b/a LaVida Vacations, and including the following language:

(1)     Royse Services violated Title III of the Americans with Disabilities Act by failing to accommodate an individual with a disability traveling with a service animal at a place of public accommodation and by refusing to waive or not charge an additional fee or cost for having the service animal; and

(2)     Royse Services must maintain policies and procedures to comply with Title III of the ADA and must train employees and management about the need, upon request, to accommodate an individual with a qualifying disability, including by waiving any surcharge for a service animal and by permitting a disabled individual with a service animal on its property without the payment of a surcharge.

I recommend granting Gonzalez prevailing party attorney's fees and costs under Section 760.35(4), Florida Statutes, and directing Gonzalez to file no later than forty-five days after the day of the order (1) a supplemental motion on the amount of fees under Local Rule 7.01(c) and (2) a supplemental bill of costs under 28 U.S.C. § 1920 with supporting evidence.

**REPORTED** this 11th day of July, 2025.

LINDSAY S. GRIFFIN
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from the day of service of this report either to file written objections to the proposed findings and recommendation or to seek an extension of the fourteen-day deadline. 28 U.S.C. § 636(b)(1)(C). Under Eleventh Circuit Rule 3-1, a party failing to object to a magistrate judge's findings or recommendations "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). If the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.